IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-03842 |
| | ) | |
| CIVITAS EDUCATION | ) | Honorable Judge John J. Tharp Jr. |
| PARTNERS, LLC, CHICAGO | ) | |
| CHARTER SCHOOL FOUNDATION | ) | |
| d/b/a CHICAGO INTERNATIONAL | ) | |
| CHARTER SCHOOLS, INC., | ) | |
| TORRY BENNETT, and | ) | |
| LAHARI GOUD, Individually, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT**

Plaintiff Donald Evans (hereinafter referred to as "Plaintiff" or "Mr. Evans"), by his attorneys, for his Amended Complaint against Defendants, Civitas Education Partners, LLC, Chicago Charter School Foundation d/b/a Chicago International Charter Schools, Inc., Torry Bennett, and Lahari Goud (hereinafter collectively referred to as "Defendants" or "Civitas", "CICS", "Ms. Goud", and "Ms. Bennett" individually) alleges as follows:

**INTRODUCTION**

1. Mr. Evans was employed by Civitas as the Director of Human Resources from August 2019, until the unlawful termination of his employment on April 7, 2021.

2. On or around the summer of 2020, Lahari Goud became the interim CEO of Civitas.

3. After Ms. Goud began serving in her new position as Interim CEO of Civitas, Mr. Evans received informal and formal complaints of race discrimination from Dina Everage ("Ms.

Everage"), former Chief Academic Officer of Civitas, who is a Black woman, concerning Ms. Goud's conduct toward her.

4. On approximately March 24, 2021, Mr. Evans received multiple complaints from participants in a leadership meeting conducted by Ms. Goud the previous day, alleging that Ms. Goud had recorded the meeting without the consent of those in attendance in violation of the Illinois Eavesdropping Act. 720 ILCS 5/14-2(a)(2) (Hereinafter referred to as the "Illinois Eavesdropping Act"). When Mr. Evans notified Ms. Goud of these claims, she denied the claims.

5. On April 7, 2021, Ms. Everage formally notified Mr. Evans about Ms. Goud's treatment of Ms. Everage. That same day, Mr. Evans notified Ms. Goud and Torry Bennett, the next CEO of Civitas at the time, of Ms. Everage's complaint. Upon receipt of the email, Ms. Bennett and Ms. Goud requested a meeting with Mr. Evans to discuss Ms. Everage's discrimination complaint against Ms. Goud and Bennett.

6. During a meeting on the very same day, Mr. Evans, Ms. Goud, and Ms. Bennett met via Zoom. Mr. Evans started off the meeting informing them that Ms. Everage's discrimination complaint was due to her being treated less favorably than her non-black counterparts because she is a Black woman.

7. Rather than allowing any further discussion of Ms. Everage's complaint, Ms. Bennett and Ms. Goud informed Mr. Evans that his employment with Civitas was terminated effective the next day. Ms. Bennett assured Mr. Evans that his employment was being terminated due to restructuring and had nothing to do with Mr. Evans' performance.

8. Mr. Evans, the Director of Human Resources, had never heard anything about a restructuring or reorganization. Despite claiming a restructuring, Mr. Evans' position was posted by Civitas shortly after the termination.

9. Mr. Evans brings a claim of unlawful retaliation in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (hereinafter referred to Section 1981"), for assisting Ms. Everage in her complaint of race discrimination against Civitas. Mr. Evans also brings a claim of tortious interference with a business relationship or expectancy under the Illinois common law for being terminated shortly after reporting Ms. Goud's unlawful violation of the Illinois Eavesdropping Act, 720 ILCS 5/14 *et seq*. Third, Mr. Evans brings a claim of defamation *per se* under Illinois Common Law. Lastly, Mr. Evans brings a claim of wrongful termination under Illinois common law based on his reporting Ms. Goud's violation of the Illinois Eavesdropping Act.

## THE PARTIES

10. Plaintiff Donald Evans is a citizen of Illinois. Mr. Evans was the Director of Human Resources at Civitas.

11. Defendant Torry Bennett is a citizen of Illinois. Ms. Bennett, as the current CEO, is as an agent for Civitas who was involved in Mr. Evans' termination.

12. Defendant Lahari Goud is a citizen of Illinois. Ms. Goud, as the current President, is an agent for Civitas who was involved in Mr. Evans' termination.

13. Defendant Chicago Charter School Foundation d/b/a Chicago International Charter School, Inc., is a citizen of Illinois. Chicago Charter School Foundation d/b/a Chicago International Charter School, Inc. is an Illinois not-for-profit corporation incorporated in the State of Illinois and headquartered in the same.

14. Defendant Civitas Education Partners, LLC, previously known as Civitas Education Services, LLC and ABC Educational Services, LLC ("Civitas"), is a citizen of Illinois. Civitas is an Illinois Limited Liability Company created as a school management company for several campuses of Chicago International Charter School. Civitas is an Illinois LLC and its sole

member is CICS. CICS is the direct controlling entity of Civitas and a joint employer of Plaintiff. CICS controlled decisions regarding the termination of employment and the supervision and controlled conditions of Civitas' employees.

**JURISDICTION AND VENUE**

15. Jurisdiction is invoked under 28 U.S.C. § 1331 because this case involves federal questions arising under 42 U.S.C. § 1981, *et seq*.

16. This Court has supplemental jurisdiction over Evans' state law claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the § 1981 claim that they form part of the same case or controversy.

17. This action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391 in that, Mr. Evans applied and interviewed for his position in Chicago, Illinois, worked in Chicago, Illinois, and his employment was terminated in Chicago, Illinois, which is in the Northern District of Illinois.

**RELEVANT FACTS**

18. Chicago Charter School Foundation and Civitas are joint employers, evident by Ms. Bennett, acting as an agent for Civitas in her capacity as the principal at the time, confirming that she had a conversation with Christine Leung, the interim CEO of CICS, regarding the elimination of the Human Resources Department and the termination of Mr. Evans. Moreover, CICS supervised and controlled conditions of Civitas' employees' employment to a substantial degree, evident by Ms. Leung asking Mr. Evans through email and several telephone calls about the complaints that Ms. Everage had filed against Ms. Goud on or around September of 2020. Therefore, Chicago Charter School Foundation d/b/a Chicago International Charter School, Inc. was a joint employer of Mr. Evans with Civitas Education Partners, LLC.

19. Mr. Evans was employed by Civitas Education Partners, LLC ("Civitas"), as the Director of Human Resources from August of 2019, until the termination of his employment on April 7, 2021.

20. During Mr. Evans' employment with Civitas, he was viewed as an exceptional employee. Under Mr. Evans' supervisor, LeeAndra Khan, the former CEO of Civitas, Mr. Evans received an excellent 360 performance review in 2020. Ms. Khan wrote that Mr. Evans "brings a wealth of labor and HR experience to Civitas." Ms. Khan went on to praise Mr. Evans for his work in negotiating with the Union and creating a human resource hiring guide for Civitas. Further, Mr. Evans' colleagues, including Ms. Bennett, stated that they were lucky to have Mr. Evans and praised his ability to support Civitas' staff, his knowledge and skill in recognizing the existing flaws in Civitas' systems, policies, and procedures, and his ability to correct those issues.

21. On or around the spring or summer of 2020, Ms. Khan left Civitas, and was replaced by Lahari Goud, who became the interim CEO of Civitas.

22. On September 17, 2020, Dina Everage, the former Chief Academic Officer for Civitas, a Black woman, sent an email to Ms. Goud and Mr. Evans requesting a meeting to discuss Ms. Everage's employment duties and requested human resources facilitate the meeting. Further, Ms. Everage stated that this was the second meeting she requested with Ms. Goud. Ms. Goud refused any human resources involvement at the time.

23. On September 28, 2020, Mr. Evans notified Christine Leung, the interim CEO of CICS, to whom Ms. Goud reported at the time, that Ms. Everage was complaining about Ms. Goud's conduct, and sought guidance on how to proceed with the situation. Ms. Leung provided conflicting guidance. First, she requested for Mr. Evans to send her Ms. Everage's complaint, that she then reviewed and informed him there was no case. Ms. Leung continued to switch her

position, by then refusing to provide Mr. Evans any guidance on how to deal with the situation and told Mr. Evans that he should engage with Ms. Goud on any such matter.

24. Around that same time, in a Zoom meeting where Kevyn Harmon, COO of Civitas, Karl Kemp, Mr. Evans, and Ms. Goud were in attendance, Ms. Goud informed Mr. Evans that he was being subjected to a desk audit. When Mr. Evans asked Ms. Goud why he was being subjected to a desk audit, Ms. Goud stated "because I say so."

25. On September 30, 2020, Ms. Everage contacted Mr. Evans to discuss filing a formal complaint against Ms. Goud concerning the discriminatory treatment Ms. Goud allegedly subjected Ms. Everage to. Ms. Everage had previously requested human resources' participation to rectify the issue, but Ms. Goud refused. Mr. Evans was supportive in assisting Ms. Everage with her complaint, but Ms. Everage decided not to file a formal discrimination complaint at the time – because she feared retaliation, she told Mr. Evans.

26. Mr. Evans advised Ms. Goud that he did not support termination of Ms. Everage, though requested by Ms. Goud because such a termination was not supported by any documentation, there were no issues with Ms. Everage's performance, and no actions had been taken to address Ms. Everage's work product or performance issues through remediation.

27. Shortly after Mr. Evans raised concerns about terminating Ms. Everage's employment without some type of remedial effort, Ms. Goud constructively demoted Mr. Evans in terms of his leadership status within the organization when she had him begin to report directly to Kevyn Harmon, who Goud first promoted to the position of COO of Civitas, rather than to herself, the Interim CEO.

28. On January 1, 2021, Ms. Everage filed a formal complaint against Ms. Goud with Civitas' human resources department for the discriminatory practices she was being subjected to based on her race, which created a hostile work environment.

29. On January 15, 2021, Mr. Evans met with Ms. Goud to interview her about Ms. Everage's allegations.

30. Early in February 2021, Mr. Harmon informed Mr. Evans that Ms. Goud had directed Mr. Harmon to keep Mr. Evans "out of the loop" on any matter related to human resources, although Mr. Evans was the Director of Human Resources. Mr. Harmon stated that Ms. Goud was still demanding that Mr. Evans terminate Ms. Everage's employment. Mr. Harmon went on to state that Torry Bennett, who was working with Ms. Goud prior to assuming the CEO position of Civitas, would not keep Mr. Evans around because he did not terminate Ms. Everage's employment.

31. In response to Mr. Harmon's statements about terminating Ms. Everage's employment, Mr. Evans explained that in order to terminate Ms. Everage, Ms. Goud would need to provide documentation of any failures, misbehavior, or otherwise insubordinate behavior, and any related communication from Ms. Goud to demonstrate that she had advised Ms. Everage of her failures and provided expectations, which Ms. Goud could not provide. Mr. Evans explained these requirements because Ms. Everage was Black and her White colleagues were not being targeted for termination. Without a legitimate business reason Mr. Evans was concerned that the termination violated federal and state anti-discrimination laws. Mr. Harmon explained that he understood and reiterated that Ms. Goud hated both Mr. Evans and Ms. Everage.

32. On March 23, 2021, Ms. Goud conducted a leadership meeting (via Zoom) for Civitas. The next day, Mr. Evans began receiving complaints from those who were in attendance

at the leadership meeting that the meeting had been recorded without Ms. Goud requesting the consent of those who were in attendance. Mr. Evans immediately emailed Ms. Goud concerning this serious allegation which Mr. Evans understood would be a violation of Illinois law and was a felony. Ms. Goud claimed that she "announced prior to starting (the meeting) that the meeting would be recorded since, REC (believed to be referring to Ralph Emerson School) was on a site visit and requested it." Mr. Evans could not identify any evidence that Ms. Goud requested consent to record the meeting. Ms. Goud provided no evidence of her claim that she had requested consent.

33. On April 7, 2021, Mr. Evans sent Ms. Goud and Ms. Bennett separate emails advising each of them that Ms. Everage had filed another complaint. Both Ms. Goud and Ms. Bennett requested a Zoom meeting to discuss the complaint with Mr. Evans.

34. During the Zoom meeting which was scheduled specifically, to discuss Ms. Everage's complaint, Mr. Evans started the meeting by informing Ms. Goud and Ms. Bennett that Ms. Everage's discrimination complaint was due to her being treated differently on the account that she is a Black woman. However, rather than continuing to discuss this matter, Ms. Goud shifted the topic, advising Mr. Evans that his employment with Civitas was being terminated, effective the next day. When Mr. Evans asked Ms. Goud who was running the meeting and in what capacity, Ms. Goud stated that both women were running the meeting as Co-CEOS.

35. Ms. Bennett went on to say that the decision to terminate Mr. Evans' employment was unrelated to his work product but was for the purpose of allowing them to "work better." Ms. Goud and Ms. Bennett claimed that Mr. Evans' position as Director of Human Resources was being eliminated, despite the fact that the human resources responsibilities Mr. Evans handled are necessary at any company.

36. Though being the Director of Human Resources, Mr. Evans had never heard anything regarding a restructuring or reorganization.

37. No other employees were subject to a reorganization or termination in this time period apart from Ms. Everage, who was also terminated on or around the same day as Mr. Evans.

38. Although Civitas claimed that the Director of Human Resources position had been eliminated, Civitas posted the "Director of Talent" position on May 26, 2021. The Director of Talent position holds the same essential job functions as the Director of Human Resources position that Mr. Evans had just held. After Mr. Evans applied for the Director of Talent position, Civitas promptly removed the job posting without filling the role.

## COUNT I: RETALIATION
### (Civil Rights Act of 1866, 42 U.S.C. § 1981)
### (Against Civitas and CICS)

39. Mr. Evans restates and reasserts the allegations of paragraphs 1 through 38 as paragraph 39 of Count I.

40. Mr. Evans engaged in protected activities when he investigated Ms. Everage's complaint relating to unlawful race discrimination in January of 2021, and notified Civitas' leadership of those complaints in January of 2021, and April 7, 2021. On April 8, 2021, Mr. Evans stated that Ms. Everage's complaint was due to her, as a Black woman, being treated in a discriminatory manner.

41. Civitas, through its agents, Ms. Goud and Ms. Bennett, acting in their capacity as Civitas employees, took a material adverse action against Mr. Evans for engaging in protected activities when Civitas terminated Mr. Evans' employment after Mr. Evans notified Civitas leadership of Ms. Everage's race discrimination complaint.

42. Civitas' claim through its agents who were acting in their capacity as Civitas employees that it terminated Mr. Evans' employment position due to a reorganization is pretext for terminating Mr. Evans due to his protected activity, as Civitas posted a position that held the same essential job functions as Mr. Evans' employment position shortly after Civitas terminated Mr. Evans' employment. Moreover, the timing of Mr. Evans' termination and the termination of Ms. Everage's employment the same day further establish the improper motivation for Mr. Evans' termination.

43. Mr. Evans was damaged as a result of the termination including loss of income and benefits, embarrassment, humiliation, damage to professional and personal reputation, and damage to his career.

**WHEREFORE** Plaintiff respectfully request the entry of judgment in their favor and against Defendants as follows:

A. Backpay;

B. Compensatory damages;

C. Attorney's fees;

D. Costs; and

E. Such other, further, and additional relief as may be just in law and in equity.

### COUNT II: VIOLATION OF THE ILLINOIS EAVESDROPPING ACT
### 720 ILCS 5/14 *et seq*
### (Against All Parties)

44. Mr. Evans restates and reasserts the allegations of paragraphs 1 through 43 as paragraph 44 of Count II.

45. Ms. Goud committed eavesdropping under the Illinois Eavesdropping Act when she knowingly and intentionally used a recording device to record the March 23, 2021, leadership

meeting she held for Civitas in a surreptitious manner and without the knowing consent of all present for the meeting.

46. Mr. Evans was in attendance at the March 23, 2021, leadership meeting Ms. Goud unlawfully recorded without his consent.

47. Civitas and CICS knowingly employed Ms. Goud, who was acting as an agent for Civitas and CICS when she illegally used an eavesdropping devise in the course of employment. Upon suspicion and belief, Civitas and CICS knowingly derived a benefit from Ms. Goud's illegal recording of the March 23, 2021, leadership meeting.

**WHEREFORE** Plaintiff respectfully request the entry of judgment in their favor and against Defendants as follows:

A. An injunction prohibiting further eavesdropping by Defendants;

B. All actual damages;

C. Punitive damages to be determined by the trier of fact;

D. An award for reasonable attorney fees and costs; and

E. Such other, further, and additional relief as may be just in law and in equity.

### COUNT III: TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### (Against Bennett and Goud)

48. Mr. Evans restates and realleges by reference paragraphs 1 through 47 as paragraph 48 of Count III.

49. Mr. Evans was hired as a Director of Human Resources on August of 2019, in which he signed his employment contract. All parties were aware of his employment relationship.

50. Defendants had no justification for giving Mr. Evans a false reason for his termination by citing to a restructuring, especially given that he was a valued employee and thus, being against Civitas' best interest.

51. The individual Defendants, acting as agents for Civitas and CICS in the capacity of their employment with Civitas, intentionally interfered with Mr. Evans' expectation of his continued employment as Director Human of Resources with Civitas by fabricating claims that Mr. Evans was being terminated because the human resources department at Civitas would be eliminated. In fact, Ms. Bennett even specifically stated that Mr. Evans' employment was not being eliminated due to his performance and praised his work performance, but rather, due to the restructuring. This explanation was proven false and dishonest when just weeks later Civitas posted the employment position of "Director of Talent," which essentially held the same job responsibilities as the Director of Human Resources position that Mr. Evans had just held, and then abruptly took down the posting when Mr. Evans submitted his application for the position. Defendants interfered with Mr. Evans' employment by fabricating a "restructuring", when in fact, they simply wanted to rid Civitas of Mr. Evans due to his sexual orientation.

52. It was not in the best interest of Civitas to terminate Mr. Evans and force out a high-performing, well-liked and hard-working employee from Civitas for a non-legitimate reason.

53. Prior to April 7, 2021, the day that Mr. Evans was unexpectedly informed of his termination during a meeting Mr. Evans believed was regarding a complaint filed against Ms. Goud and Ms. Bennet, Mr. Evans had a legitimate expectancy in continuing his employment with Civitas as he had done for approximately 2 years. Defendants knew of Mr. Evans' intention to maintain his employment with Civitas as Mr. Evans never gave any such indication that he wished to leave Civitas, given the fact that he wished to stay at Civitas until retirement. Moreover, he

informed Ms. Bennett when she was hired as the CEO that with his skill set and experience, Mr. Evans could help her find success as the CEO until he retired.

54. As a result of tortious interference by the individual Defendants, Mr. Evans has damages including, but not limiting to, substantial loss of economic opportunity and damage to his professional reputation.

**WHEREFORE**, Plaintiff Donald Evans respectfully requests the entry of judgment in his favor against all individual Defendants as follows:

A. An award of compensatory damages in an amount to be proven at trial;

B. An award of punitive damages to be determined by the trier of fact;

C. An award of costs; and

D. Such other, further, and additional relief as may be just in law and in equity.

**COUNT IV: DEFAMATION *PER SE***
**(Against All Defendants)**

55. Mr. Evans restates and realleges by reference paragraphs 1 through 54 as paragraph 55 of Count IV.

56. At around the time of Mr. Evans' termination Ms. Goud made false statements to employees at Civitas, specifically stating that Mr. Evans was not performing his job responsibilities and that Mr. Evans did not know what he was doing, despite being aware that Mr. Evans always received top performance reviews from his previous supervisor, LeeAndra Khan, former CEO of Civitas and received an excellent 360 performance review in 2020.

57. These false allegations were communicated to Civitas employees, including Kevyn Harmon, the former COO of Civitas.

58. Mr. Evans became aware of the statements Ms. Goud was making about his ability to perform his job and ability in his profession in or around January of 2022.

59. At the time the statements were made, Ms. Goud was an agent of Civitas Education Partners, who made these statements in the capacity of her employment.

60. The statements made by Defendant are words that imputed Evans was unable to perform his job and lacked integrity.

61. At all relevant times, Defendants knew, or should have known, that the statements were false and defamatory, and acted with malice in making such statements.

62. The statements made by Defendants are not subject to innocent construction.

63. Based upon information and belief, Mr. Evans expects that more evidence of defamatory statements circulating in the Civitas community and his profession concerning Evans will be revealed during discovery.

64. As a result of Defendants' conduct, Mr. Evans suffered damage to his reputation, was humiliated, and suffered from a loss of income.

**WHEREFORE,** Plaintiff, Donald Evans, respectfully requests the entry of judgment in his favor against all Defendants as follows:

A. Injunctive relief in the form of a permanent injunction that prohibits Defendants from publishing false and defamatory statements concerning Mr. Evans, including, but not limited to, any statement or insinuation that Mr. Evans was not qualified in his position and that he was not performing his job adequately;

B. An award of compensatory damages, including presumed damages, in an amount to be proven at trial;

C. Punitive damages;

D. An award of pre- and post-judgment interest, computed according to 735 ILCS § 5/2-1303;

E.      An award of punitive damages to be determined by the trier of fact; and

F.      Such other and further relied as may be just in law and in equity.

## COUNT V: WRONGFUL TERMINATION
### (Against Civitas and CICS)
### (Alternative Pleading to Count I)

65.     Mr. Evans restates and realleges by reference paragraphs 1 through 64 as paragraph 65 of Count V.

66.     On April 7, 2021, Mr. Evans was told in a meeting with Ms. Goud and Ms. Bennett, who represented Civitas, that his employment with Civitas was being terminated, effective April 8, 2021.

67.     Mr. Evans' termination was in retaliation for his activities involving the reporting of Defendants' violation of the Illinois Eavesdropping Act on March 24, 2021 after receiving multiple complaints from individuals attending a meeting conducted by Ms. Goud on March 23, 2021. Mr. Evans told Ms. Goud that he was receiving such complaints and that this was a serious allegation. Ms. Goud denied that this was true. Defendants never engaged in any investigation regarding this issue.

68.     Defendants wrongfully discharged Mr. Evans' by terminating him for reporting the violations of the Illinois Eavesdropping Act, which is considered a felony and is also actionable for civil remedies. 720 ILCS 5/14-6.

69.     As a result of Defendants' conduct in Mr. Evans' wrongful termination, Mr. Evans lost income, suffered damage to his reputation and was humiliated in front of his colleagues.

**WHEREFORE**, Plaintiff Donald Evans respectfully requests the entry of judgment in his favor against all individual Defendants as follows:

A.      An award of compensatory damages in an amount to be proven at trial;

B.  An award of punitive damages to be determined by the trier of fact;

C.  An award of costs; and

D.  Such other, further, and additional relief as may be just in law and in equity.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury on all issues so triable.

Respectfully submitted,

**Dated**: August 5, 2022              **DONALD EVANS**

 /s/ Ruth I. Major
One of His Attorneys


Ruth I. Major (ARDC No. 6205049)
Sunyoung Cho (ARDC No. 6338816)
**The Law Offices of Ruth I. Major P.C.**
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Phone: (312) 893-7544
rmajor@major-law.com
scho@major-law.com