**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DONALD EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22 C 3842 |
| | ) | |
| CIVITAS EDUCATION PARTNERS, | ) | Judge John J. Tharp, Jr. |
| LLC, CHICAGO CHARTER SCHOOL | ) | |
| FOUNDATION d/b/a CHICAGO | ) | |
| INTERNATIONAL CHARTER | ) | |
| SCHOOLS, INC., TORRY BENNETT, | ) | |
| AND LAHARI GOUD, Individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Donald Evans brings this claim against his former employer, its officials, and its parent company for wrongful termination, tortious interference with a business relationship, defamation *per se*, and violations of the Illinois Eavesdropping Act and § 1981 of the Civil Rights Act. He claims that the defendants fired him for advocating on behalf of an employee who accused the interim CEO of racial discrimination, and for reporting alleged violations of Illinois privacy law.

Before the Court are two motions to dismiss for failure to state a claim. Defendant Chicago International Charter Schools, Inc. (CICS) seeks dismissal of all counts against it on the grounds that the plaintiff failed to plead facts sufficient to establish its liability as a joint employer. The remaining defendants attack each of the plaintiff's five claims individually, raising a variety of purported defects.

Jurisdiction in this case is predicated on Evans' federal claim under § 1981 (Count 1). The remaining claims are premised on state law and are before the Court pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367(a). As discussed below, however, the complaint does not

contain sufficient factual allegations to permit the inference that Evans engaged in "protected activity"—a necessary element of a § 1981 retaliation claim. Accordingly, the Court dismisses the plaintiff's § 1981 claim under Federal Rule of Civil Procedure 12(b)(6). The plaintiff will be given leave to amend, however, so it is prudent, for the sake of judicial efficiency, to retain jurisdiction over the state law claims to also evaluate whether they are adequately alleged.[1] Accordingly, the Court will analyze each of the five counts in turn.

## BACKGROUND

Plaintiff Donald Evans worked as the Director of Human Resources for Civitas Education Partners from August 2019 to April 2021. One year into his tenure, Evans became embroiled in a dispute between Dina Everage, the company's Chief Academic Officer, and Lahari Goud, the interim CEO.

Conflict began to simmer in autumn 2020. On September 30, Everage (a black woman) told Evans that she wanted to file a complaint against her boss, Goud, for racial discrimination. (The complaint does not describe what Everage alleged regarding discrimination by Goud.) As the HR Director, Evans helped Everage with her complaint. But Everage explained that she did not want to file for fear of retaliation.

Sometime later, Goud reached out to Evans, directing him to terminate Everage. Evans opposed the idea, explaining that Goud lacked cause and, in any case, had not taken remedial measures to address any performance issues. Goud apparently did not take kindly to this feedback, "constructively demot[ing]" Evans by directing him to report to Civitas' Chief Operating Officer on all future matters.

---

[1] If the plaintiff ultimately fails to state a federal claim under § 1981, it would then be appropriate to decline to exercise jurisdiction over the state law claims.

Temperatures continued to rise. On January 1, 2021, Everage decided to submit her complaint against Goud for racial discrimination. Evans interviewed Goud to investigate the allegations. Soon afterwards, Goud directed the COO to keep Evans—the Director of HR—"out of the loop" on all HR-related matters. Nevertheless, the COO explained to Evans that Goud was still demanding Everage's termination and that, if Evans did not comply, Evans' own employment would be jeopardized. Again Evans pushed back, insisting that Goud could not fire Everage without first documenting her failings and trying to remedy them.

On March 23, 2021, Goud conducted a Civitas leadership meeting over Zoom. She decided to record the meeting without the participants' consent. Some of the attendees complained to Evans the next day about the recording, prompting Evans to send Gould an email accusing Goud of violating Illinois privacy law.

Tensions reached a boiling point shortly thereafter. On April 7, 2021, Evans informed Goud and Torry Bennett, the incoming CEO set to succeed Goud, that Everage had just filed a second complaint. Goud and Bennett arranged a Zoom meeting with Evans, purportedly to discuss the allegations. Instead, the two officials informed Evans that he was being terminated, effective the next day. Goud and Bennett explained that the termination was unrelated to Evans' work product and was instead driven by a desire to ensure that the team "work[ed] better." They also informed Evans, apparently for the first time, that the position of Director of Human Resources was being eliminated. Goud subsequently told other employees that Evans had been terminated because he "did not know what he was doing" and "was not performing his job responsibilities."

After his discharge, Evans saw a job posting for a "Director of Talent" at Civitas. The posting described essentially the same job functions as the Director of Human Resources, so Evans decided to apply. As soon as he did, Civitas removed the job posting.

Burned, Evans brought a federal lawsuit against Bennett, Goud, his former employer Civitas, and its parent company CICS. In a five-count complaint, Evans alleged: (1) that all four defendants violated § 1981 of the Civil Rights Act by terminating him in retaliation for opposing unlawful discrimination; (2) that all four defendants violated the Illinois Eavesdropping Act by surreptitiously recording a Zoom meeting without participants' consent; (3) that Bennett and Goud tortiously interfered with Evans' business relationship with the company by terminating him; (4) that all four defendants defamed Evans *per se* when Goud claimed he had been terminated for incompetent performance; and (5) that Civitas and CICS engaged in wrongful termination by terminating him for reporting violations of the Illinois Eavesdropping Act.

In response to Evans' complaint, the defendants filed two motions to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). Bennett, Goud, and Civitas argued that each of Evans' five claims was either legally defective or unsupported by sufficient factual allegations in his complaint. CICS filed separately, arguing that it played no part in terminating Evans or otherwise managing personnel decisions at Civitas and thus cannot be held liable.

## DISCUSSION

The defendants contend that Evans has fallen short of the minimum requirement to state a valid claim under federal pleading standards. That minimum is set by Rule 8 of the Federal Rules of Civil Procedure, which directs plaintiffs to articulate "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require a plaintiff to "set forth a complete and convincing picture of the alleged wrongdoing." *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 727 (7th Cir. 1986). The plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When evaluating whether a complaint states a valid claim, the Court construes it in the light most favorable to the plaintiff, accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826-27 (7th Cir. 2014). That said, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 679 (internal quotation marks omitted), and gives no weight to allegations that consist solely of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

The defendants argue that all of Evans' claims fail as a matter of law. The Court assesses each, starting with § 1981.

**Count I: Retaliation Under 42 U.S.C. § 1981**

Section 1981 prohibits employers from discriminating against employees based on race. *See Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (emphasizing that "[t]he legal analysis for discrimination claims under Title VII and § 1981 is largely identical"). The statute extends beyond direct victims of discrimination to also protect persons who faced retaliation for opposing discrimination against others. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 445 (2008); *see also O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). To bring a retaliation claim under § 1981, a plaintiff must allege that (1) she engaged in an activity protected by the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *See Mintz v. Caterpillar Inc.*, 788 F.3d 673, 680-81 (7th Cir. 2015).

Section 1981 sets "a low bar" for what qualifies as protected activity. *See Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 892 (7th Cir. 2004). A plaintiff does not need to prove—or, at the pleading stage, allege—that the action she opposed constituted unlawful discrimination. *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002) (cleaned up). But the plaintiff must, at a minimum, state facts plausibly suggesting that she "reasonably believed in good faith that the practice she opposed violated" anti-discrimination law. *Id.* The plaintiff must also allege that she took "some step in opposition to a form of discrimination that the statute prohibits." *O'Leary*, 657 F.3d at 631.

As written, Evans' complaint provides an insufficient basis to infer that he "reasonably believed" that Goud racially discriminated against Everage. The complaint frequently repeats that Everage experienced racial discrimination by Goud, shared this with Evans, and filed an internal complaint asserting the same. The plaintiff provides zero information, however, about the substance of Everage's allegations. The reader is left entirely in the dark regarding why Everage believed that Goud had discriminated against her, the incident or incidents that constituted discrimination, and what details, if any, Everage shared with Evans on the matter. Without those details, the Court cannot assess whether Evans' belief that Goud had discriminated against his colleague was reasonable—a prerequisite to engaging in protected activity under § 1981.

For this reason, Count I fails to state a claim. Because the shortcomings identified above relate to the complaint's level of descriptiveness rather than any terminal defect of law, however, the plaintiff may well be able to correct them in an amended complaint. The Court accordingly dismisses Count I without prejudice. *See* FED. R. CIV. P. 15(a) (directing courts to "freely give leave" to amend a complaint "when justice so requires"); *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (noting that leave to amend is particularly

appropriate when, as here, the amendment would not be futile and the court is dismissing a complaint for the first time).

Because Evans did not—and, as an Illinois citizen suing Illinois defendants, could not—invoke diversity, this Court's authority to exercise supplemental jurisdiction over his four state-law claims rests on the supplemental jurisdiction provided by 28 U.S.C. § 1367(a). "[W]hen the court dismisses the federal claim *on the merits*, it has the discretion under § 1367(c)(3) to decline to hear related state-law claims or to retain them, though there is a general presumption that the court will relinquish supplemental jurisdiction and dismiss the state-law claims without prejudice." *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018). The § 1981 claim has not been resolved on the merits, however; leave to amend is being granted. Because this case remains at the pleading stage, it is appropriate to address the sufficiency of the complaint with respect to those claims as well. To do otherwise would result in a piecemeal approach to assessing whether the complaint presents colorable claims that would cause needless delays and duplicative motion practice. Accordingly, the Court will retain supplemental jurisdiction over the state law claims and will assess whether those claims are plausible.

**Count II: Violation of the Illinois Eavesdropping Act**

### A. Sufficiency of the Complaint

Count II of Evans' complaint alleges a violation of the Illinois Eavesdropping Act. That Act prohibits the use of "an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or part of any private conversation" without the consent of all parties. 720 ILCS 5/14-2(a)(2). A "private conversation" refers to any oral communication that "one or more of the parties intended … to be of a private nature under circumstances reasonably justifying that expectation." 720 ILCS 5/14-1(d). The Act clarifies that "[a] reasonable expectation shall

include any expectation recognized by [federal or state] law." *Id.* To bring a claim under the Illinois Eavesdropping Act, then, at least one participant in the conversation must have held a reasonable expectation of privacy.

The Court cannot resolve the question of whether the participants in the conversation had a reasonable expectation of privacy during the Zoom call, however, because the allegations of the complaint do not suffice to establish that Evans has Article III standing to assert a claim premised on a violation of the Illinois Eavesdropping Act. To establish Article III standing, Evans must allege that he suffered an injury in fact that is fairly traceable to the challenged conduct of the defendant and would likely be redressed by a favorable ruling. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). An "injury in fact" must be "particularized," meaning it "must affect the plaintiff in a personal and individual way. *Spokeo v. Robins*, 578 U.S. 330, 339 (2016) (cleaned up). No one has standing to assert injuries experienced entirely by others. *See id.* Further, Evans cannot rely on his standing to assert other claims. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021).

The complaint does not state that Evans attended the Zoom meeting Goud allegedly recorded or that he made any statements in the course of that hearing. It actually implies the opposite, stating that Evans emailed Goud about the violation after "receiving complaints from those who were in attendance." Am. Compl. ¶ 32, ECF 7. If that is true, Evans cannot assert that Goud violated his own expectation of privacy, only that of his colleagues. Unless Evans can provide an explanation for how such a violation also harmed him in a concrete and particularized way, he lacks standing to bring Count II. *Baysal v. Midvale Indemn. Co.*, 78 F.4th 976, 978 (7th

Cir. 2023 ("[A] suit fails for lack of standing unless the complaint plausibly alleges concrete injury caused by the asserted wrong." (citing *Dep't of Ed. v. Brown*, 600 U.S. 551 (2023))).

The defendants did not raise this argument, but the Court has a duty to assess its own jurisdiction *sua sponte. Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) ("Jurisdiction is the 'power to declare law,' and without it the federal courts cannot proceed. Accordingly, not only may the federal courts police subject matter jurisdiction *sua sponte,* they must." (quoting *Ruhrgas v. Marathon Oil Co.,* 526 U.S. 574, 577 (1999))). And as to this claim, as presently pleaded, jurisdiction is lacking. The claim is dismissed without prejudice, as Mr. Evans may be able to supply additional allegations that would establish his standing to assert this claim.[2]

## Count III: Tortious Interference with a Business Relationship

Evans also claims that Goud and Bennett committed a tort by interfering with his legitimate business relationship with his employer, Civitas. To claim tortious interference under Illinois law, a plaintiff must allege that a third party knowingly induced the termination of the plaintiff's reasonable expectation of a business relationship through intentional and unjustified interference. *See Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 406-07, 667 N.E.2d 1296, 1299 (1996). The term "third party" is key. A person cannot be held liable for tortiously interfering with a contract to which she herself is a party. *See Douglas Theater Corp. v. Chicago Title & Tr. Co.*, 288 Ill. App.

---

[2] If Evans repleads this claim, he would do well to supplement his pleading on the merits as well. While employees do not surrender all privacy rights with the punch of a timecard, it is difficult to credit the plaintiff's assertion that the employees directed by the CEO to participate in a business-related conference call initiated by the CEO had a reasonable expectation of privacy as to statements they made during such a call. Also, the claim appears wanting to the extent that it purports to target defendants other than Goud. In short, the defendants have provided substantial arguments in opposition to this claim, and Evans should take full advantage of the opportunity to bolster it.

3d 880, 884, 681 N.E.2d 564, 567 (1997); *Fiumetto v. Garrett Enters., Inc.*, 321 Ill. App. 3d 946, 957, 749 N.E.2d 992, 1004 (2001).

The principle that no one may tortiously interfere with their own contract applies to both natural and corporate persons. When an officer acts in an official capacity to advance a corporation's interests, the action is imputed to the corporation and the officer cannot be held liable for tortiously interfering with any contracts to which it may be party. *See George A. Fuller Co. v. Chicago Coll. of Osteopathic Med.*, 719 F.2d 1326, 1333 (7th Cir. 1983). But that immunity is not absolute. An officer who acts contrary to a corporation's best interests to advance her own personal goals or injure another party may be fully liable for tortious interference. *Id.*; *see also Worrick v. Flora*, 133 Ill. App. 2d 755, 759, 272 N.E.2d 708, 711 (1971) (emphasizing that a supervisor is exempt from liability only when "acting in accord with the interests of the employer").

Evans claims that Goud and Bennett chose to terminate him out of personal self-interest and not as representatives of Civitas. Evans further asserts that his termination was contrary to Civitas' best interests because he was a dedicated and high-performing employee. Because the decision to fire Evans was driven by personal animus rather than a regard for the company's best interests, Goud and Bennett cannot be said to have acted as mere agents of Civitas and may be held liable for tortiously interfering in its employment contract with Evans. Or so the argument goes.

Evans' position finds some support in the complaint. Goud allegedly engaged in several actions that suggest personal animus, from terminating Evans "due to his sexual orientation" to subjecting Evans to a desk audit without cause. Am. Compl. ¶¶ 24, 27, 30, 51. None of these actions was consistent with Civitas' interests or motivated by a desire to advance them. Goud, in

10

particular, had a strong personal incentive to silence potentially career-ending allegations of racial discrimination, and she allegedly took multiple steps to advance that goal.

On the other hand, Evans explicitly claims that Goud and Bennett discharged Evans while "acting as agents for Civitas and CICS in the capacity of their employment with Civitas." *Id.* at ¶ 51. The complaint consistently reiterates this point, emphasizing that "Goud was an agent of Civitas," that "Goud and Bennett 'represented Civitas' in telling Plaintiff that he was being discharged," and that Civitas gave a pretextual reason for Evans' termination "through its agents who were acting in their capacity as Civitas employees." *Id.* at ¶¶ 42, 59, 66. These assertions undercut the idea that Goud and Bennett fired Evans out of pure self-interest. The complaint unmistakably alleges that they also did so as corporate agents seeking to advance their principal's interests.

Because we accept all well-pleaded factual allegations, our task is to harmonize the complaint's allegations regarding Goud and Bennett's motivations. This permits only one conclusion: the defendants were driven by both a desire to advance their employer's interests as officers of the company *and* by personal animosity and self-interest. This hybrid goal is an issue for Evans. Illinois courts are clear that an employee must act *solely* for personal gain in order to tortiously interfere with an employer's contract. *See Vajda v. Arthur Andersen & Co.*, 253 Ill. App. 3d 345, 359, 624 N.E.2d 1343, 1352 (1993) ("[T]o overcome th[e] privilege, plaintiff will be required to prove that Carty was acting solely for his own gain or solely for the purpose of harming plaintiff."); *Mittelman v. Witous*, 135 Ill. 2d 220, 249, 552 N.E.2d 973, 987 (1989) ("Th[e] qualified privilege does not apply where officers act solely for their own gain or solely for the purpose of harming plaintiff since such conduct is not undertaken to further the corporation's interest."). An employee who is partially motivated to advance her employer's interest is

considered a corporate representative for purposes of tortious-inference immunity. *See id.* Given that the complaint accuses Goud and Bennett of acting, in part, to serve Civitas, Evans cannot assert a tortious-interference claim against either defendant. *See Fiumetto*, 321 Ill. App. 3d at 957 (holding that a plaintiff could not bring a tortious-interference claim against a defendant who fired the plaintiff while acting in her official capacity as an agent of the corporation).

**Count IV: Defamation *per se***

### A. Sufficiency of the Complaint

Evans claims that the defendants defamed him *per se* by impugning his professional competence behind his back. In Illinois, a claim of defamation must include "facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491, 917 N.E.2d 450, 459 (2009). Defamation *per se* occurs when a statement's harm is "obvious and apparent on its face." *Id.* Courts have recognized several categories of statements that qualify as defamatory *per se*, including words that imply a person lacks ability or otherwise prejudices them in their profession. *Id.* at 491-92. Defamation claims, including claims of defamation *per se*, have a one-year statute of limitations. *See* 735 ILCS 5/13-201.

The defendants argue that Evans' defamation claim is time barred. They submit that the one-year statute of limitations has long passed, since Goud made the allegedly defamatory comments "around the time of [Evans'] termination" in April 2021 but Evans did not file this lawsuit until July 25, 2022. *See* Am. Compl ¶ 56, ECF 7. Evans responds that the limitations period should be calculated from the date on which he first discovered Goud's statements, not from the date when

those statements were originally made. He claims to have first learned about Goud's defamatory comments in January 2022, making the lawsuit timely.

The general rule in Illinois is that a limitations period begins to run when "facts exist that authorize the bringing of a cause of action." *Khan v. Deutsche Bank AG*, 365 Ill. Dec. 517, 525, 978 N.E.2d 1020, 1028 (2012). If strictly applied, this rule would routinely result in statutes of limitations expiring before a plaintiff has had an opportunity to learn about a defendant's wrongdoing. To avoid this outcome, Illinois courts apply a "discovery rule" to "postpone the start of the period of limitations" in certain tort cases "until the injured party knows or reasonably should know of the injury." *See id.* at 525-26; *Peal v. Lee*, 403 Ill. App. 3d 197, 207, 933 N.E.2d 450, 460-61 (2010). Illinois courts use the discovery rule "on a case-by-case basis, weighing the relative hardships of applying the rule to both plaintiffs and defendants." *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 78, 651 N.E.2d 1132, 1135 (1995).

The defendants read Illinois law for the straightforward proposition that the discovery rule does not apply to defamation claims. The plaintiff urges a contrary reading: that the applicability of the discovery rule to defamation turns on the method of communication. When an allegedly defamatory statement is broadcast widely through mass media, the plaintiff concedes that the time of publication heralds the start of the limitations period. But when, as here, a defendant communicates a defamatory statement to a limited audience through nonpublic channels, the plaintiff argues that Illinois' discovery rule tolls the statute of limitations until such time as the plaintiff might reasonably be expected to learn about the statement.

The plaintiff has the better argument. The defendants correctly note that Illinois' limitations period for defamation generally starts at the time of publication. *See id.*; *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill. 2d 129, 131-32, 334 N.E.2d 160, 161

(1975) ("It has been generally held that in defamation cases the cause of action accrues and the statute of limitation begins to run on the date of publication of the defamatory material."). But that is not a hard-and-fast rule. *See Ciolino v. Simon*, 2020 IL App (1st) 190181, ¶ 52, 170 N.E. 3d 992, 1005 (2020) ("acknowledg[ing] that there is some uncertainty about what circumstances should cause us to apply the discovery rule in defamation cases"); *Tirio v. Dalton*, 2019 IL App (2d) 181019, ¶ 68, 144 N.E.3d 1261, 1281-82 (2019) ("[T]here is uncertainty as to when the discovery rule should apply in defamation cases."). To the contrary, Illinois Courts of Appeals have developed an exception to the time-of-publication rule for publications that are "hidden, inherently undiscoverable, or inherently unknowable." *Blair v. Nevada Landing P'ship*, 369 Ill. App. 3d 318, 327, 859 N.E.2d 1188, 1195 (2006). And the Illinois Supreme Court has explicitly applied the discovery rule in a defamation case where the statement at issue was communicated through a nonpublic medium. *See World of Fashion*, 61 Ill. 2d at 131-32.

*World of Fashion* is instructive. There, Illinois' highest court held that the statute of limitations for a defamation claim accrued at the point when the plaintiff knew or should have known about an allegedly defamatory statement, not when it was initially published. *Id.* at 136-37. In support of that holding, the Court emphasized that the statement was published in a credit report distributed to a limited number of subscribers—a context that "can be readily distinguished from [cases] involving alleged defamations through so-called mass-media publication." *Id.* at 137-38. The Court noted that the purpose of the statute of limitations is "not to shield the wrongdoer [but] to discourage the presentation of stale claims and to encourage diligence in the bringing of actions." *Id.* at 137. That purpose, the Court observed, does not apply when a statement is published through private channels that a plaintiff cannot reasonably be expected to follow. A plaintiff can hardly be faulted for lack of diligence for belatedly challenging a defamatory claim

14

of which she was justifiably ignorant. *See Schweihs v. Burdick*, 96 F.3d 917, 921 (7th Cir. 1996) (analyzing *World of Fashion* and concluding that Illinois courts "seem to apply the discovery rule in situations where the defamatory material is published in a manner likely to be concealed from the plaintiff").

Goud communicated allegedly defamatory statements through media even more private than those that triggered the discovery rule in *World of Fashion*. The complaint alleges that Goud made false statements about Evans to other Civitas employees, presumably through in-person communications. Unlike in *World of Fashion*, Goud's statements were never distributed through newsletters or otherwise made available to a broader audience. As such, the statements easily fall within the nonpublic-communication exception to Illinois' time-of-publication rule. The Court therefore applies the discovery rule to the plaintiff's defamation claim, tolling the applicable limitations period until the time when Evans either discovered or reasonably should have discovered Goud's statements. The complaint asserts that Evans first learned about Goud's false claims in January 2022. His lawsuit, filed in July 2022, falls within Illinois' one-year statute of limitations.

The defendants challenge Evans' defamation claim on a second ground as well. Appealing to the "innocent-construction rule," the defendants emphasize that a statement cannot be considered defamatory *per se* if, after reading it in context "with the words and the implications therefrom given their natural and obvious meaning," it "may reasonably be innocently interpreted or reasonably be interpreted" as non-defamatory. *Chapski v. Copley Press*, 92 Ill. 2d 344, 352, 442 N.E.2d 195, 199 (1985). The defendants argue that Goud's comments about Evans' job performance can be reasonably interpreted as non-defamatory and are thus not actionable under Illinois' innocent-construction rule.

The Court disagrees. Read in context, the statements at issue do not lend themselves to innocent construction. Goud allegedly stated that Evans "was not performing his job responsibilities" and "did not know what he was doing." Am. Compl. ¶ 56. Such accusations fall within the core of what Illinois courts have described *per se* defamation: "words that impute a person is unable to perform … her or his employment duties" or "lacks ability … in her or his profession." *Green*, 234 Ill. 2d at 492. Goud's statements match the timbre of other comments found to be defamatory. *See, e.g., Barakat v. Matz*, 271 Ill. App. 3d 662, 666, 648 N.E.2d 1033, 1038 (1995) (holding that the statement that the plaintiff "was a joke" and "was not any good" as a doctor qualified as defamatory *per se*). Taken in context—as an explanation given to Civitas employees for why Evans had to be fired—the meaning of Goud's comments was "natural and obvious": Evans was an incompetent worker. That unmistakable insinuation naturally "harms a person's reputation to the extent it lowers the person in the eyes of the community"—the essence of defamation. *See Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 579, 852 N.E.2d 825, 839 (2006). Because no reasonable person could interpret Goud's comments in a different manner, the innocent-construction rule is inapplicable. *See Bryson v. News Am. Pubs., Inc.*, 174 Ill. 2d 77, 93, 672 N.E.2d 1207, 1217 (1996) ("When a defamatory meaning was clearly intended and conveyed, this court will not strain to interpret allegedly defamatory words in their mildest and most inoffensive sense in order to hold them nonlibellous under the innocent construction rule."); *Green*, 234 Ill. 2d at 491 (courts should not "strain to see an inoffensive gloss" on a statement clearly intended or unmistakably conveying a defamatory meaning).

Defendants insist that Goud's statements were mere expressions of personal opinion, which are not actionable in Illinois. *See Mittelman v. Witous*, 135 Ill. 2d 220, 245, 552 N.E.2d 973, 985 (1989) ("[S]tatements of opinion are never actionable, even if special damages are alleged."

16

(quoting *Spelson v. CBS, Inc.*, 581 F. Supp. 1195, 1202 (N.D. Ill. 1984))). To qualify as an expression of pure opinion, however, a statement "cannot be reasonably interpreted as stating actual fact." *Solaria Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 581, 852 N.E.2d 825, 840 (2006). If a statement of opinion "impl[ies] an assertion of objective fact," even in part, it remains subject to a potential defamation claim. *See Dubinsky v. United Airlines Master Exec. Couns.*, 303 Ill. App. 3d 317, 324, 708 N.E.2d 441, 447 (1999).

Goud's comments, while on some level reflective of her personal views, rested on a core assertion of objective fact: that Evans was "not performing his job responsibilities." *See* Am. Compl. ¶ 56. Such a claim—not that Evans was performing inadequately or unexceptionally in the eyes of his superior but that he was categorically failing to complete certain tasks—is verifiable. *See Mittelman*, 135 Ill. 2d at 243 (looking to a statement's verifiability as one key determinant of whether it constitutes an actionable statement of fact). The mere fact that the statement could have been more precise does not alter the Court's bottom-line conclusion: Goud's allegedly defamatory statements implied a foundation of objective fact and were thus actionable.

Urging the contrary conclusion, defendants rely heavily on *Antonacci v. Seyfarth Shaw, LLP*, 2015 IL App (1st) 142372, 39 N.E.3d 225 (2015). In *Antonacci*, the Illinois Court of Appeals evaluated an email sent by a professional-development consultant to human-resource staff regarding a new hire. The court found that the email, which described how the employee was not performing according to another officer's expectations, could reasonably be interpreted as non-defamatory. The court found that "[e]ach … statement[] was specifically confined to the context of [the defendant's] working relationship with [the plaintiff] and his fit with [the company]." *Id.* at 237. "In this context," the court continued, "we cannot reasonably conclude that [the] statements accused [the plaintiff] of actions and misconduct that imputes a general lack of integrity in the

performance of his duties …. Rather, the more reasonable conclusion is that [the defendant] stated her belief that [the plaintiff] was not a good fit with [the company] and did not work well with her." *Id.*

Although *Antonacci* bears some resemblance to the case under review, it does not dictate the outcome for several reasons. First, the author of the allegedly defamatory email in *Antonacci* did not criticize the plaintiff's job performance; she simply described criticisms that had been levelled by others. Indeed, the professional-development consultant who authored the email had no personal interaction with the plaintiff and made no independent assessment of the plaintiff's competence. Read in context, her email simply relayed concerns that had been shared by another employee. *See id.* at 230-31 (noting that "*Anita* thought [the plaintiff] did not act appropriately," "[a]ccording to *her*, [the plaintiff] handled criticism very inappropriately," and "[*s*]*he* thinks her relationship with working with him in future is highly speculative" (emphasis added)).

Second, the *Antonacci* court emphasized that the accusations against the plaintiff were "confined to the context of [his] working relationship with [an employee] and his fit with [the company]." *Id.* at 237. Neither the author of the email nor the employee whose complaints it repeated accused Antonacci of professional incompetence. At most, the statements amounted to a charge that Antonacci "did not work well" with a particular team. *See id.* at 237. In sharp contrast, Goud claimed that Evans "did not know what he was doing" and was failing at his job. Am. Compl. ¶ 56. This claim cuts to the core of Evans' competence. It is not susceptible to innocent construction.

Because Illinois' discovery rule tolls the statute of limitations for defamation communicated through nonpublic channels, and because Goud's comments cannot be reasonably

interpreted as non-defamatory, the Court finds that Evans has pleaded a plausible claim of defamation *per se* under Illinois law.

### B. Proper Defendants

Evans has properly alleged defamation *per se* against the defendant who allegedly defamed him: Lahari Goud. For the remaining defendants, Evans' claim is inadequate. Although Evans alleges defamation *per se* against Bennett, he does not identify a single defamatory statement that Bennett either made or repeated.

Evans also does not provide an adequate explanation for including Civitas or CICS. Under Illinois law, an employer may be vicariously liable for certain torts committed by employees acting within their scope of employment. *See Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163-64, 862 N.E. 2d 985, 991-92 (2007). Seeking to invoke this doctrine, Evans asserts that Goud was "an agent of Civitas" who "made these statements in the capacity of her employment" without any elaboration. That is not enough. At the motion-to-dismiss phase, plaintiffs are expected to prevail based on the strength of their pleadings, not the correctness of their legal terminology. "Capacity of employment" is a complex, multi-factor standard, not an incantation parties may chant to unlock the next stage of litigation. Evans provides no basis to believe that defaming him was a task that Goud was "employed to perform," "occur[red] substantially within [] authorized time and space limits," or was "actuated, at least in part, by a purpose to serve" Goud's employer—the three bedrock factors that Illinois courts consider when deciding whether an action fell within an employee's scope of employment. *See id. at* 164. Without such allegations, Evans' conclusory assertion that Goud acted within the scope of her employment is unavailing. *See Iqbal*, 556 U.S. at 679 (emphasizing that courts are "not bound to accept as true a legal conclusion couched as a factual allegation").

As for CICS, Evans has failed to allege the factual predicates of employer status to begin with. Five factors inform the existence of an employer relationship: "(1) the extent of the employer's control and supervision over the employee; (2) the kind of occupation and nature of skill required, including whether skills were acquired on the job; (3) the employer's responsibility for the costs of operation; (4) the method and form of payment and benefits; and (5) the length of the job commitment." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 702 (7th Cir. 2015) (citing *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991)) (the *Knight* factors). The first consideration—the employer's right of control—is the most important. *Id.* In evaluating an employer's right to control, courts pay particular attention to the "key powers … of hiring and firing." *Id.* at 703 (quoting *E.E.O.C. v. State of Illinois*, 69 F.3d 167, 171 (7th Cir. 1995)).

The complaint does not contain enough factual allegations to support its characterization of CICS as a joint employer. *See Shah v. Littelfuse Inc.*, No. 12-cv-6845, 2013 WL 1828926, at *3 (N.D. Ill. Apr. 29, 2013) (rejecting the conclusory statement that a company was a "joint employer" as insufficient to state a claim of liability). Evans asserts vaguely that CICS "controlled decisions regarding the termination of employment and the supervision and controlled conditions of Civitas' employees." Am. Compl. ¶ 14. But he fails to articulate any additional details on the nature and extent of the control exercised by CICS. The complaint does not state whether CICS had any role in reviewing or investigating discrimination complaints, overseeing human resource matters generally, or terminating Civitas employees. Evans claims that the interim CEO of CICS communicated with Evans about Everage's complaint and "had a conversation" with Bennett regarding Evans' termination. *See id.* ¶ 18. But the Court finds no allegation that any CICS official possessed the authority to direct Civitas' response to discrimination claims or make hiring and

20

firing decisions. Nor does the complaint provide any support for a joint-employer relationship under the remaining four *Knight* factors. Accordingly, the Court declines to extend liability to CICS as a joint employer.

## Count V: Wrongful Termination

Evans brings Count V as an alternative pleading to Count I. Count V asserts that Civitas wrongfully terminated him in retaliation for reporting Goud's violation of the Illinois Eavesdropping Act. Am. Compl. ¶¶ 65-69.

Wrongful termination is "a limited and narrow tort" in Illinois. *Jacobson v. Knepper & Moga, P.C.*, 185 Ill. 2d 372, 376, 706 N.E.2d 491, 492 (1998). To bring a claim for wrongful termination, a plaintiff must allege that he was discharged in retaliation for engaging in certain activity and that his discharge contravened a clearly mandated public policy. *Id.* If that public policy is already "adequately safeguarded without extending the tort of retaliatory discharge" to the conduct at issue, Illinois courts will not entertain such claims. *Id.* at 377-78 (declining to extend the tort of retaliatory discharge to employee attorneys because the law already "provide[s] adequate safeguards to the public policy implicated in this case").

Evans' asserted public policy—protecting against violations of the Illinois Eavesdropping Act—is already sufficiently advanced without extending the tort of wrongful termination. It is true that, in Illinois, a cause of action for wrongful termination generally extends to an employee who "is discharged in retaliation for the reporting of illegal or improper conduct." *Id.* at 376. But when the state's laws already authorize fulsome remedies for victims of such misconduct, that statutory scheme supersedes the common law right to sue for wrongful termination. *Id.* The Eavesdropping Act squarely provides such relief. Indeed, it authorizes injunctive relief, actual damages, and punitive damages against violators of its privacy provisions. *See* 720 ILCS 5/14-6(1)(b)-(c). In

doing so, the Act adequately protects the very public policy Evans invokes to justify his wrongful-termination claim, rendering the tort claim superfluous.

*   *   *

For the reasons stated above, the Court dismisses Counts I, III, and V of the complaint for failure to state a claim. Count II is dismissed for lack of subject-matter jurisdiction. CICS' separate motion to dismiss is granted. The dismissals are without prejudice. The plaintiff is granted leave to amend by October 30, 2024. In the absence of a timely amended complaint, Count IV will also be dismissed without prejudice and judgment will be entered for the defendants.

Dated: October 9, 2024

John J. Tharp, Jr.
United States District Judge